# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| WAVE NEUROSCIENCE, INC. a Delaware Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> BRAIN FREQUENCY LLC, a Texas Limited Liability Company; and WINDMILL WELLNESS RANCH LLC, a Texas Limited Liability Company <br><br> Defendants. | Case No. 5:23-CV-00626 <br><br> Honorable: <br><br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff Wave Neuroscience, Inc. ("Wave" or "Plaintiff") complains and alleges as follows against defendants Brain Frequency, LLC ("Brain Frequency") and Windmill Wellness Ranch LLC ("Windmill") (collectively "Defendants"):

## NATURE OF ACTION

1.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*. Wave seeks damages, attorney's fees, costs, pre and post-judgment interest, and permanent injunctive relief.

## THE PARTIES

2.    Wave Neuroscience is a Delaware corporation with a principal place of business at 1601 Dove Street, Suite 205, Newport Beach, California 92660.

COMPLAINT

3.      Brain Frequency is a Texas limited liability company with a principal place of business at 26229 North Cranes Mill Road, New Braunfels, TX 78133.

4.      Windmill is a Texas limited liability company with a principal place of business at 26229 North Cranes Mill Road, New Braunfels, TX 78133.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Brain Frequency because: (a) Brain Frequency's principal place of business is in this District; (b) Brain Frequency transacts business in and maintains continuous and systematic contacts with this District and the State of Texas; and (c) Brain Frequency has committed acts of patent infringement and/or contributed to or induced acts of patent infringement by others in this District and elsewhere in Texas and the United States.

7.      This Court has personal jurisdiction over Windmill because: (a) Windmill's principal place of business is in this District; (b) Windmill transacts business in and maintains continuous and systematic contacts with this District and the State of Texas; and (c) Windmill has committed acts of patent infringement and/or contributed to or induced acts of patent infringement by others in this District.

8.      Venue is proper in the United States District Court for the Western District of Texas under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b). Defendants reside in, have committed acts of patent infringement in, and have regular and established places of business in this District.

9.      Certain products manufactured by or for Brain Frequency and/or infringing services have been and/or are currently being offered for sale by Brain Frequency operating out of its principal place of business in this District. Those products and services are being offered within this District and other locations within Texas and throughout the United States.

10.     Certain products manufactured by or for Windmill and/or infringing services have been and/or are currently being offered for sale by Windmill operating out of its principal place of business in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF
### Wave Neuroscience's Business

11.     Wave is a recognized global-leader in developing personalized, non-invasive technology aimed at addressing neurological disorders and enhancing cognitive brain function through Transcranial Magnetic Stimulation ("TMS").

12.     Wave's technological advancements in the areas of testing and treatment of neurological disorders and in enhancing cognitive brain function using TMS are evidenced by its extensive patent and trademark portfolio and its

collection of proprietary historical data of patient electroencephalogram ("EEG")
results and associated medical conditions.

13.     Wave's patented technology involves analyzing patients' EEG results
to derive insight into the patients' brain health. Wave combines its proprietary
algorithms with years of proprietary historical data to create an actionable
cognitive treatment report. Doctors and clinics use Wave's patented equipment and
treatment protocols to treat patients to achieve long-lasting cognitive health.

14.     NeoSync, Inc. ("NeoSync") was founded in 2008 as a clinical stage
company. NeoSync helped pioneer personalized TMS for the treatment of major
depressive disorder and other diseases of the central nervous system. Medical
professionals acknowledged the synchronized transcranial magnetic stimulation
using EEG was a "new neuromodulation technique," and confirmed the findings
using NeoSync's EEG Synchronized TMS ("N.E.S.T.") device.[1]

15.     On February 13, 2020, Wave acquired certain assets from NeoSync,
including, but not limited to two of the patents at issue in this case, which
enhanced Wave's patent and trademark portfolio, along with its collection of
proprietary historical data of patient EEG results and associated medical
conditions.

---

[1] Cook I.A., Wilson A.C., Corlier J., Leuchter A.F. 2019. Brain Activity and
Clinical Outcomes in Adults With Depression Treated With Synchronized
Transcranial Magnetic Stimulation: An Exploratory Study. Neuromodulation 2019;
22: 894–897, attached as Exhibit 6.

COMPLAINT

16.     Kosivana Holdings Limited ("Kosivana") was founded in 2015 as a location in Cyprus for Wave Neuroscience, which was then doing business as Newport Brain Research Laboratory, Inc.  Kosivana helped develop technologies relating to rTMS devices and the treatment of pain, mental disorders, and spinal disorders.

17.     On June 12, 2019, Wave acquired certain assets from Kosivana, including, but not limited to, one of the patents at issue in this case, which enhanced Wave's patent and trademark portfolio related to its proprietary TMS and rTMS products.

18.     Wave is currently conducting an FDA-grade clinical study, Phase I of which was funded by the U.S. Department of Defense to validate the safety and medical efficacy of its proprietary technology for the treatment of persistent post-concussion symptoms and persistent post-concussive syndrome from traumatic brain injury in collaboration with U.S. Special Operations Command. Phase II will proceed with funding from the Texas A&M Institute for Bioscience and Technology.

19.     Wave's patented technology is being used by or in connection with its numerous strategic partners including, but not limited to, the U.S. Department of Defense, Department of Veterans Affairs, Special Operations Care – Fund (SOC-F), Tomahawk Charitable Solutions, Texas A&M Institute for Bioscience and

Technology, Ohio State University – Physical Medicine and Rehabilitation,

Kerlan-Jobe Orthopedic Sports Medicine, Cedar-Sinai, University of Southern

California Center for Neurorestoration, Enterhealth Ranch - Substance Abuse

Treatment Center, and Warriors Heart – Addiction, Chemical Dependency &

PTSD Treatment Center for Active Military, Veterans, and First Responders.

20.     Wave's products, services, and successful treatments have been

featured on over 50 podcasts including The Broken Brain, Finding Center, The Joe

Rogan Experience, Bulletproof Veteran, Military Veteran Dad, Vets First, and

many more.

21.     With the assistance of Veteran Service Organizations and various

non-profit organizations, Wave has underwritten more than $1 million in care for

Veterans in need.

## The Asserted Patents

22.     Mental disorders generate serious problems for those who suffer from

them, their families, and society. Historically, physicians have treated these

disorders with a variety of medications, many of which have significant negative

side effects. Repetitive Transcranial Magnetic Stimulation (rTMS) is a non-

pharmaceutical procedure utilizing an electromagnet placed on the scalp that

generates a series of magnetic field pulses roughly the strength of an MRI scan.

COMPLAINT

23.     Patients receiving treatment for persistent post-concussion symptoms due to Traumatic Brain Injury[2] and depression symptoms (PHQ9) using Wave's proprietary technology have demonstrated promising results with robust academic rigor sufficient to warrant prestigious grant and research funding in excess of $15 million.

24.     Wave has developed or acquired numerous patents that implement its rTMS treatments. These patents cover specific methods of treatment for specific patients using a specific administration of frequencies at specific conditions to achieve a specific outcome.

25.     On January 6, 2015, the U.S. Patent and Trademark Office issued United States Patent No. 8,926,490, entitled "SYSTEMS AND METHODS FOR DEPRESSION TREATMENT USING NEURO-EEG SYNCHRONIZATION THERAPY" (the "'490 Patent"). A true and correct copy of the '490 Patent is attached as Exhibit 1.

26.     The '490 Patent describes methods, devices, and systems for a novel, inexpensive, and easy to use therapy for treatment of depression using alternating magnetic fields to gently "tune" the brain and affect symptoms of depression.

27.     On April 21, 2015, the U.S. Patent and Trademark Office issued United States Patent No. 9,015,057 entitled "SYSTEMS AND METHODS FOR

---

[2] Based on the Rivermead Post-Concussion Questionnaire 16 ("RPQ16").

COMPLAINT

CONTROLLING AND BILLING NEURO-EEG SYNCHRONIZATION THERAPY" (the "'057 Patent"). A true and correct copy of the '057 Patent is attached as Exhibit 2.

28.     The '057 Patent describes methods, systems, and devices for controlling and/or billing a novel, inexpensive, easy to use therapy for a number of mental disorders that gently "tunes" the brain and affects mood, focus, and cognition of a subject using alternating magnetic fields to implement neuro-EEG synchronization therapies.

29.     On July 24, 2018, the U.S. Patent and Trademark Office issued United States Patent No. 10,029,111, entitled "RTMS AT  HARMONICS OF BIOLOGICAL SIGNALS" (the "'111 Patent"). A true and correct copy of the '111 Patent is attached as Exhibit 3.

30.     The '111 Patent describes methods of administration of rTMS at a pulse rate equal to or a harmonic of a patient's given biological metric, such as heart rate or respiratory rate, to establish frequency coupling among different organs through rhythmic entrainment using the harmonic closest to the desired EEG frequency based on the targeted cognitive element or symptom.

31.     On April 26, 2022, the U.S. Patent and Trademark Office issued United States Patent No. 11,311,741, entitled "SYSTEMS AND METHODS FOR ANXIETY TREATMENT USING NEURO-EEG SYNCHRONIZATION

COMPLAINT

THERAPY" (the "'741 Patent"). A true and correct copy of the '741 Patent is attached hereto as Exhibit 4.

32.   The '741 Patent describes methods, devices, and systems for a novel, inexpensive, and easy to use therapy for treatment of anxiety using alternating magnetic fields to gently "tune" the brain and affect symptoms of anxiety.

33.   The '490 Patent, the '057 Patent, the '111 Patent, and the '741 Patent are referred to collectively as the "Asserted Patents."

34.   Wave's products and services are acknowledged as being breakthrough treatments, new and novel for improving brain health and clinical results for treatment of many disorders. The tremendous success of Wave's treatments, including its patented devices and methods, confirms that the inventions claimed in the Asserted Patents were not well-understood, routine, or conventional at the time of the Asserted Patent's filings. To the contrary, the claimed devices, systems, and methods have solved technical problems to provide unique solutions for patient brain health and treating specific conditions. Some exemplary publications illustrating Wave's commercial success and unique solutions to brain health include:

Business Wire[3]

_____

[3] https://www.businesswire.com/news/home/20190904005867/en/Special-Operations-Care-Fund-SOC-F-and-Tomahawk-Charitable-Solutions-to-Support-Leader-in-Neurotherapeutics-to-Provide-Breakthrough-Treatment-Technology-for-Special-Operations-Veterans attached as Exhibit 7.

COMPLAINT

Infinite Hero Foundation[4]

Football Morning In America[5]

Autism Parenting[6]

Defense One[7]

Local10[8]

35.     The success of Wave's patented technology is also reflected in the fact that Wave not only has more than thirty licensed clinics performing treatments daily in California, Florida, Colorado, Maryland, Nevada, New York, Oklahoma, Texas, and Virginia, but also operates clinics internationally in Panama and Australia.

---

[4] https://www.prnewswire.com/news-releases/infinite-hero-foundation-announces-2014-grants-281743191.html attached as Exhibit 8.
[5] http://profootballtalk.nbcsports.com/2019/06/10/fmia-guest-nick-hardwick-post-nfl-brain-health/ attached as Exhibit 9.
[6] https://www.autismparentingmagazine.com/autism-mert-therapy/ attached as Exhibit 10.
[7] https://www.defenseone.com/technology/2019/01/zap-how-electric-therapy-curing-navy-seals-ptsd-and-could-remake-brain-science/154301/ attached as Exhibit 11.
[8] https://www.local10.com/health/2020/01/30/brain-treatment-center-offers-novel-approach-to-treat-autism/ attached as Exhibit 12.

COMPLAINT

## INFRINGING CONDUCT

36.     The tremendous popularity and commercial success of Wave's

patented technology has spawned imitators, including Brain Frequency and

Windmill, which have and continue to copy Wave's products and services.

Defendants are actively—directly and indirectly—infringing the Asserted Patents.

37.     According to Defendants' websites, Brain Frequency founder and

member Shannon Malish opened Windmill, where she is CEO, in 2017. [9] Ms.

Malish, a licensed social worker, developed Brain Frequency's infringing

treatment methods and oversees their use at Windmill's facility.[10]

38.     Brain Frequency and Windmill share a common location and common

leadership, i.e. Ms. Malish. Ms. Malish, a Brain Frequency and Windmill agent,

actively promotes the commercial development of Brain Frequency's technology

and methods.[11] The equipment used in Brain Frequency's treatments is regulated

by the FDA according to Brain Frequency's website.[12] Moreover, Windmill

prominently promotes Brain Frequency treatments, including by embedding videos

from Brain Frequency's YouTube page into its website.

---

[9] https://brainfrequency.ai/; https://windmillwellnessranch.com/about/our-team.
According to the Texas Comptroller of Public Accounts website, Ms. Malish is
also Windmill's director and president.
[10] *See, e.g.*, Gladden Longevity Podcast, Nov. 2022, "Is this how you fix your brain
once and for all?" (in which Ms. Malish explains the development of and treatment
of patients using Brain Frequency's techniques) (available at
https://open.spotify.com/episode/1tYFdD61I7dN4nvD7YrKKK?si=ef34fadb30054
a80)
[11] *See id.* (Gladden Longevity Podcast)
[12] https://brainfrequency.ai/treatment-process

COMPLAINT

39.     Windmill, along with other facilities, actively utilizes and advertises Brain Frequency's infringing treatment methods and devices. Windmill uses "The Brain Frequency™ system" to induce neuromodulation after performing an EEG to measure electrical patterns in the brain.[13] This Brain Frequency system then uses "gentle, short, magnetic pulses" to treat symptoms like depression and anxiety.[14] This description, among many other examples on Defendants' public websites and YouTube channels,[15] confirms Defendants' products and services directly infringe the Asserted Patents.

40.     In addition to its use at Windmill's location, infringing Brain Frequency treatment is used at numerous "Brain Frequency™ Locations" in Texas, California, Arizona, and Utah.[16]

41.     On information and belief, Brain Frequency does not perform medical activities or administer patient treatments. Instead, Brain Frequency was formed to develop technology and to commercialize that technology by licensing it to third-party medical providers to treat their own patients. As a result, Brain Frequency is not a "related health care entity" as that term is defined in 35 U.S.C. § 287(c).

---

[13] https://windmillwellnessranch.com/our-program/brain-frequency
[14] *Id.* (*see* embedded video: "How Windmill Wellness Ranch uses Brain Frequency")
[15] https://www.youtube.com/@BrainFrequencyai; https://www.youtube.com/@wwr-rehab
[16] https://brainfrequency.ai/texas

COMPLAINT

42.     Wave's claims against Windmill are limited to those arising from its development, use, or commercialization of medical devices. Windmill's infringing activity is directly related to the commercial development, sale, and distribution of a machine, manufacture, or composition of matter and is regulated by the Federal Food, Drug, and Cosmetic Act such that Windmill is not engaged in "medical activity" protected from liability under 35 U.S.C. § 287(c). Specifically, Windmill's CEO and agent, Ms. Malish, actively promotes the commercial development, sale, and distribution of medical devices used in the "Brain Frequency™ System," including, but not limited to, the accused device that infringes the '057 Patent. This and other devices are regulated by the FDA.[17] Moreover, Windmill's website prominently displays infringing devices along with infringing treatment methods.[18]

43.     The '490 Patent describes, among other things, a system for treating depression in a subject comprising: a magnetic field generator comprising a non-transitory computer readable medium containing a subject data value and a processor configured to control the magnetic field based on said subject data value. Exhibit 1 ('490 Patent) Claim 1.

---

[17] https://brainfrequency.ai/treatment-process

[18] https://windmillwellnessranch.com/our-program/brain-frequency

COMPLAINT

44.     Disclosures made on Defendants' websites showing the infringement of each element of Claim 1 of the '490 Patent is presented in Exhibit 5.

45.     The '057 Patent describes, among other things, a device comprising a magnetic field generator operable to apply a magnetic field configured to move a Q-factor of the intrinsic frequency up, down, or toward a pre-selected Q factor, and a controller subunit that controls at least one of: applying the magnetic field and/or applying treatments to the subject. Exhibit 2 ('057 Patent) Claim 14.

46.     Disclosures made on Defendants' websites showing the infringement of each element of Claim 14 of the '057 Patent are presented in the claim chart attached as Exhibit 5.

47.     The '111 Patent describes, among other things, a method of improving a physiological condition or a neuropsychiatric condition which comprises subjecting a human to rTMS at a frequency of a non-EEG biological metric, or an harmonic or sub-harmonic, of said non-EEG biological metric.  Exhibit 3 ('111 Patent) Claim 1.

48.     Disclosures made on Defendants' websites showing the infringement of each element of Claim 1 of the '111 Patent are presented in Exhibit 5.

49.     The '741 Patent describes, among other things, a method of treating anxiety comprising adjusting the output of a magnetic field for influencing a Q-factor of an intrinsic frequency within a specified EEG band acquired from the

COMPLAINT

subject toward a preselected Q-factor and applying said magnetic field close to the subject's head. Exhibit 4 ('741 Patent) Claim 1.

50.     Disclosures made on Defendants' websites showing the infringement of each element of Claim 1 of the '741 Patent are presented in Exhibit 5.

## COUNT I
## <u>INFRINGEMENT OF UNITED STATES PATENT NO. 8,926,490</u>
### (Against Brain Frequency and Windmill)

51.     Wave incorporates the allegations of paragraphs 1-50 as if set forth here.

52.     On January 6, 2015, the U.S. Patent and Trademark Office duly and legally issued the '490 Patent.

53.     At all relevant times, Wave or its predecessor-in-interest, NeoSync, has been the lawful owner of right, title, and interest in and to the '490 Patent, including the right to sue for and collect past damages.

54.     The '490 Patent is valid and enforceable.

55.     As demonstrated by the claim chart attached as Exhibit 5, Defendants have been and are directly infringing pursuant 35 U.S.C. § 271, literally or under the doctrine of equivalents, at least Claim 1 of the '490 Patent by using, manufacturing, importing, offering for sale, and/or selling products and/or treatments to patients that incorporate the system claimed in the '490 Patent.

56.     As demonstrated by the claim chart attached as Exhibit 5, Defendants have and continue to induce their customers to directly infringe at least Claim 1 of the '490 Patent by intentionally promoting, aiding, and instructing customers to purchase and use the products and/or treatments that incorporate the system claimed in the '490 Patent.

57.     Defendants knew or should have known the use of the products and/or treatments that incorporate the technology claimed in the '490 Patent by their clients directly infringes at least Claim 1 of the '490 Patent.

58.     As further demonstrated in the claim chart attached as Exhibit 5, Defendants have also contributed, and continue to contribute, to infringement because Defendants knew or should have known the use of the Brain Frequency products and treatments by their clients directly infringes at least Claim 1 of the '490 Patent.

## COUNT II
## INFRINGEMENT OF UNITED STATES PATENT NO. 9,015,057
### (Against Brain Frequency and Windmill)

59.     Wave incorporates the allegations of paragraphs 1-58 as if set forth here.

60.     On April 21, 2015, the U.S. Patent and Trademark Office duly and legally issued the '057 Patent.

COMPLAINT

61.    At all relevant times, Wave or its predecessor-in-interest of the '057 Patent, NeoSync, has been the lawful owner of right, title, and interest in and to the '057 Patent, including the right to sue for and collect past damages.

62.    The '057 Patent is valid and enforceable.

63.    As demonstrated by the claim chart attached as Exhibit 5, Defendants have been and are directly infringing pursuant to 35 U.S.C. § 271, literally or under the doctrine of equivalents, at least Claim 14 of the '057 Patent by making, using, manufacturing, importing, offering for sale, and/or selling products and/or treatments to patients that incorporate the device claimed in the '057 Patent.

64.    As demonstrated by the claim chart attached as Exhibit 5, Defendants have also been and continue to induce their customers to directly infringe at least Claim 14 of the '057 Patent by intentionally promoting, aiding, and instructing customers to purchase and use the products and/or treatments that incorporate the device claimed in the '057 Patent.

65.    Defendants knew or should have known the use of the products and/or treatments that incorporate the device claimed in the '057 Patent by their clinicians and clients directly infringes at least Claim 14 of the '057 Patent.

66.    As further demonstrated in the claim chart attached as Exhibit 5, Defendants have also contributed, and continue to contribute, to infringement because Defendants knew or should have known that the use of the Brain

COMPLAINT

Frequency products and treatments by their clinicians and their clients directly

infringes at least Claim 14 of the '057 Patent.

## COUNT III

## INFRINGEMENT OF UNITED STATES PATENT NO. 10,029,111
### (Against Brain Frequency and Windmill)

67.    Wave incorporates the allegations of paragraphs 1-66 as if set forth

here.

68.    On July 24, 2018, the U.S. Patent and Trademark Office duly and

legally issued the '111 Patent.

69.    At all relevant times, Wave or its predecessor-in-interest, Kosivana,

has been the lawful owner of right, title, and interest in and to the '111 Patent,

including the right to sue for and collect past damages.

70.    The '111 Patent is valid and enforceable.

71.    As demonstrated by the claim chart attached as Exhibit 5, Windmill

has been and is directly infringing pursuant to 35 U.S.C. § 271, literally or under

the doctrine of equivalents, at least Claim 1 of the '111 Patent by using,

manufacturing, importing, offering for sale, and/or selling products and/or

treatments to patients that incorporate the method claimed in the '111 Patent.

72.    As demonstrated by the claim chart attached as Exhibit 5, Defendants

have also been and continue to induce their customers to directly infringe at least

Claim 1 of the '111 Patent by intentionally promoting, aiding, and instructing

COMPLAINT

customers to purchase and use the products and/or treatments that incorporate the method claimed in the '111 Patent.

73.    Defendants knew or should have known that the use of the products and/or treatments that incorporate the method claimed in the '111 Patent by their employees and clients directly infringes at least Claim 1 of the '111 Patent.

74.    As further demonstrated in the claim chart attached as Exhibit 5, Defendants have also contributed and continue to contribute to infringement because Defendants knew or should have known that the use of the Brain Frequency technology by its clients directly infringes at least Claim 1 of the '111 Patent.

## COUNT IV
## INFRINGEMENT OF UNITED STATES PATENT NO. 11,311,741
### (Against Brain Frequency and Windmill)

75.    Wave incorporates the allegations of paragraphs 1-74 as if set forth here.

76.    On April 26, 2022, the U.S. Patent and Trademark Office duly and legally issued the '741 Patent.

77.    At all relevant times, Wave has been the lawful owner of right, title, and interest in and to the '741 Patent, including the right to sue for and collect past damages.

78.    The '741 Patent is valid and enforceable.

COMPLAINT

79.    As demonstrated by the claim chart attached as Exhibit 5, Windmill has been and is directly infringing pursuant 35 U.S.C. § 271, literally or under the doctrine of equivalents, at least Claim 1 of the '741 Patent by using, manufacturing, importing, offering for sale, and/or selling products and/or treatments to patients that incorporate the method claimed in the '741 Patent.

80.    As demonstrated by the claim chart attached as Exhibit 5, Defendants have and continue to induce their customers to directly infringe at least Claim 1 of the '741 Patent by intentionally promoting, aiding, and instructing customers to purchase and use the products and/or treatments that incorporate the method claimed in the '741 Patent.

81.    Defendants knew or should have known the use of the products and/or treatments that incorporate the method claimed in the '741 Patent by their clients directly infringes at least Claim 1 of the '741 Patent.

82.    As further demonstrated in the claim chart attached as Exhibit 5, Defendants have also contributed, and continue to contribute, to infringement because Defendants knew or should have known the use of the Brain Frequency products and treatments by their clients directly infringes at least Claim 1 of the '741 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Wave prays for relief against Defendant as follows:

COMPLAINT

1.     A judgment that Defendants have directly infringed and are directly infringing the '490 Patent and the '057 Patent;

2.     A judgment that Windmill has directly infringed and is directly infringing the '111 Patent and the '741 Patent;

3.     A judgment that Defendants have contributed to and induced infringement of each of the Asserted Patents, and are actively contributing to and inducing infringement of each of the Asserted Patents;

4.     An award of damages adequate to compensate Plaintiff for the infringement that has occurred under 35 U.S.C. § 284, including with pre-judgment and post-judgment interest;

5.     An award of treble damages for Defendants' willful infringement of the Asserted Patents pursuant to 35 U.S.C. § 284;

6.     An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding imposition of a compulsory ongoing royalty;

7.     An order under 35 U.S.C. § 283 permanently enjoining Defendants from continuing to make, use, sell, and/or offer to sell the infringing products and services and from further inducing or contributing to the infringement of the Asserted Patents;

COMPLAINT

8.     An award of attorneys' fees, expenses, and costs based on this being

an exceptional case under 35 U.S.C. § 285, including prejudgment interest on such

fees, expenses and costs;

9.     Costs and expenses in this action;

10.     Such other further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues triable by jury.

DATED:  May 15, 2023                    **GILLAM & SMITH, L.L.P.**

By:                                     */s/ Harry L. Gillam, Jr.*

Harry L. Gillam, Jr.
State Bar No. 07921800
J. Travis Underwood
State Bar No. 24102587
**GILLAM & SMITH, L.L.P.**
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
Email: travis@gillamsmithlaw.com

**BUCHALTER**
A Professional Corporation
J. Rick Tache*
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email:  rtache@buchalter.com

* To apply *pro hac vice*

Attorneys for Plaintiff
WAVE NEUROSCIENCE, INC., a
Delaware Corporation

COMPLAINT