**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

WAVE NEUROSCIENCE, INC. a Delaware Corporation,

Plaintiff,

vs.

BRAIN FREQUENCY LLC, a Texas Limited Liability Company

Defendant.

Case No. 5:23-CV-00626-XR

Honorable: Xavier Rodriguez

**PLAINTIFF WAVE NEUROSCIENCE, INC.'S OPPOSED MOTION TO STRIKE THE DECLARATION OF DR. JARED DEMPSEY**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 3

III. DR. DEMPSEY IS NOT A PERSON OF ORDINARY SKILL IN THE ART ..... 6

IV. DR. DEMPSEY'S OPINIONS ARE UNRELIABLE AND NOT USEFUL ..... 8

V. DR. DEMPSEY DID NOT MEANINGFULLY CONSIDER EXTRINSIC EVIDENCE ..... 10

VI. DR. DEMPSEY'S OPINIONS ARE BIASED ..... 11

VII. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....4, 8

*Digital Biometrics v. Identix, Inc.*,
149 F.3d 1335 (Fed. Cir. 1998)....4

*Everlight Elecs. Co. v. Nichia Corp.*,
2014 WL 4707053 (E.D. Mich. Sept. 22, 2014)....5

*Extreme Networks, Inc. v. Enterasys Networks, Inc.*,
395 F. App'x 709 (Fed. Cir. 2010)....5

*Ferguson Beauregard/Logic Controls v. Mega Sys.*,
LLC, 350 F.3d 1327 (Fed. Cir. 2003)....3

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
381 F.3d 1352 (Fed. Cir. 2004)....3

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
381 F.3d 1111 (Fed. Cir. 2004)....3

*Key Pharms. v. Hercon Lab'ys Corp.*,
161 F.3d 709 (Fed. Cir. 1998)....9

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)....4, 9

*Phillips v. AWH Corp*.,
415 F.3d 1303 (Fed. Cir. 2005)....3, 8, 10, 13

*Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd*,
2015 WL 224942 (M.D.N.C. Jan. 15, 2015)....5

*Starhome GmbH v. AT&T Mobility LLC*,
743 F.3d 849 (Fed. Cir. 2014)....4

*Suffolk Techs., LLC v. AOL Inc.*,
752 F.3d 1358 (Fed. Cir. 2014)....4

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
550 F.3d 1356 (Fed. Cir. 2008)....5

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)....................3, 4

*Williamson ex rel. At Home Bondholders' Liquidating Tr. v. Verizon Commc'ns Inc.*,
2012 WL 5425033 (S.D.N.Y. Nov. 7, 2012)....................5

**Other Authorities**

Fed. R. Evid. 702....................1, 4, 5, 8

Plaintiff Wave Neuroscience, Inc. ("Wave") moves to strike the Declaration of Dr. Jared Dempsey (Doc. No. 34-1) filed by defendant Brain Frequency LLC ("Brain Frequency") in support of its Opening Claim Construction Brief (Doc. No. 34) and any citations to Dr. Dempsey's Declaration cited therein.

## I. INTRODUCTION

The Declaration of Dr. Jared Dempsey ("Dr. Dempsey") should be stricken because his opinions are not reliable.

The Parties disagree as to the appropriate education and experience to qualify as a person of ordinary skill in the art to which the subject inventions relate ("POSITA") for this case. As noted in each Party's respective Claim Construction Briefing, Defendant Brain Frequency and Dr. Dempsey advocate for a lower standard than Wave to qualify as a POSITA. Even under Brain Frequency's lower standard (Wave does not, even for purposes of this Motion to Strike, concede that Defendant's asserted qualifications are appropriate), it has repeatedly failed to establish that Dr. Dempsey possesses the requisite knowledge, training, skill, or education to offer an opinion from the perspective of the applicable POSITA. Where an issue, such as claim construction, requires evidence from a POSITA, it is contradictory to Fed. R. Evid. 702 to permit testimony from one who does not qualify. Here, there is no evidence in the record to show Dr. Dempsey can meet Brain Frequency's own definition of the relevant POSITA, which he states requires "having advanced training and experience in use of either EEG or TMS technology." (Doc No. 34-1, ¶ 16.) Brain Frequency has the burden of establishing his qualification and the record is facially silent as to whether Dr. Dempsey has the requisite training and experience.

Wave promptly raised its concern regarding the deficiency in Dr. Dempsey's qualifications to be a POSITA with counsel for Brain Frequency. It then engaged in meet and confer efforts in

an attempt to resolve the matter without the need for this Motion to Strike. In response, Brain Frequency summarily stated Dr. Dempsey is qualified to render his opinions as a POSITA, and provided, "as a courtesy" "a more detailed c.v." The revised curriculum vitae simply added, in pertinent part, the following insertion:

**ACTIVE RESEARCH PROJECTS**

**Study of TMS as Addiction Treatment**
Institutional Review Board: Advarra IRB # Pro00061473
**6100 Merriweather Dr., Suite 600**
**Columbia, MD 21044**
Principal Investigator: **Jared P. Dempsey**
Funding Dates: May 2022 – April 2024
Status: Data collection complete. Publication in progress.

(Declaration of J. Rick Taché ("Taché Decl.") ¶ 8(b.); Exhibit D.)

Wave's subsequent effort to obtain additional information regarding this "Active Research Project" was rejected by Brain Frequency, stating "[w]e do not understand how the information requested will have a bearing on Dr. Dempsey's qualifications" and claiming that "the information and details of the study are sensitive and confidential." (Taché Decl., ¶ 8, Exhibit C, email dated June 4, 2024, from John Saba at 10:30 PDT.) Wave made every effort to provide Brain Frequency with an opportunity to address this issue and thereby obviate the need for this Motion to Strike. Instead, Brain Frequency refused to provide the required information to establish that Dr. Dempsey meets even its own reduced qualifications and failed to do so.

Even assuming that he was somehow qualified to be a POSITA, Dr. Dempsey's declaration is little more than conclusory opinions without any meaningful analysis of the intrinsic or, as applicable, extrinsic evidence. As a result, his declaration fails to meet the standards necessary for his opinions to be useful or reliable, a prerequisite for the admissibility of his opinions.

In addition, the credibility of the opinions contained within Dr. Dempsey's declaration are suspect because he is a biased witness. The company Dr. Dempsey co-founded, Trac9.com, LLC, and Windmill Wellness Ranch LLC, an entity that shares common ownership with Brain Frequency, ostensibly have ongoing business relations.[1] Neither Brain Frequency nor Dr. Dempsey have, to date, disclosed or addressed this fact. Because of this relationship, Dr. Dempsey's opinions are not that of a neutral third-party, and as a result, they are not reliable.

Any of these reasons is sufficient for Dr. Dempsey's declaration and any references thereto contained in Brain Frequency's Opening Claim Construction Brief to be stricken.[2]

## II. LEGAL STANDARD

The claims in a patent define the invention to which the patentee is entitled protective rights. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Words of a claim are generally given their ordinary and customary meaning. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). The "ordinary and customary meaning" of a claim term is the meaning it would have to a person of ordinary skill in the art in question at the time of invention. *See Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1116 (Fed.Cir.2004) ("A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention."); *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed.Cir.2004) ("customary meaning" refers to the "customary meaning in [the] art field"); *Ferguson Beauregard/Logic Controls v. Mega Sys.*, LLC,

---

[1] Windmill Wellness Ranch, LLC was a named defendant in the instant matter (Doc. No. 1) but Wave agreed to voluntarily dismiss it without prejudice (Doc. No. 8) based upon Windmill Wellness Ranch's representation that it did not use the accused devices or perform the accused methods at its facility.

[2] Dr. Dempsey's Declaration is cited in Brain Frequency's Opening Claim Construction Brief at pages 4-7, 9, 10, 12, 13, 15-20, and 22.

350 F.3d 1327, 1338 (Fed.Cir.2003) (claim terms "are examined through the viewing glass of a person skilled in the art").

To resolve ambiguity in claim terms where the meaning is not readily apparent, the Court must, in part, look to the intrinsic evidence. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). Intrinsic evidence includes (1) the patent claims; (2) the patent specification; and (3) the prosecution history. *Id.; Vitronics Corp.,* 90 F.3d at 1582. "[I]f after consideration of the intrinsic evidence there remains doubt as to the exact meaning of the claim terms, consideration of extrinsic evidence may be necessary to determine the proper construction." *Digital Biometrics v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998). Such extrinsic evidence can include "expert testimony, dictionaries, and treatises." *Suffolk Techs., LLC v. AOL Inc.*, 752 F.3d 1358, 1362 (Fed. Cir. 2014); *see also Markman*, 52 F.3d at 980; *Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 856 (Fed. Cir. 2014).

For an expert to offer opinions, he or she must be "qualified as an expert by knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702. It is Brain Frequency's burden to prove the admissibility of its expert's opinions by showing he or she is qualified, the testimony is relevant, and that the testimony is reliable. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590–91 (1993). If Brain Frequency failed to establish that its expert is qualified or that his testimony is relevant and reliable, then the Court *must* exclude Dr. Dempsey's Declaration, opinions contained therein and the citations thereto in Brain Frequency's Opening Claim Construction Brief and any subsequent claim construction briefing. *Id.* at 589.

A proffered expert who is not a POSITA, does not have the requisite qualifications to offer opinions on claim construction: "Indeed, where an issue calls for consideration of evidence from the perspective of one of ordinary skill in the art, it is contradictory to Rule 702 to allow a witness

to testify on the issue who is not qualified as a technical expert in that art." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008); *see also Extreme Networks, Inc. v. Enterasys Networks, Inc.,* 395 F. App'x 709, 715 (Fed. Cir. 2010) (Expert "would not qualify as a person of ordinary skill in the relevant art even under her own proposed definition . . . General experience in a related field may not suffice when experience and skill in specific product design are necessary to resolve patent issues."); *Williamson ex rel. At Home Bondholders' Liquidating Tr. v. Verizon Commc'ns Inc.*, 2012 WL 5425033, at *3 (S.D.N.Y. Nov. 7, 2012) (Granting motion to exclude and explaining that expert "although possibly qualified as an expert in other fields, is not qualified as an expert in computer network architecture and, therefore, may not testify as an expert in this proceeding, where claims concerning such architecture and related processes are at issue . . . Because the Court finds that Plaintiff has failed to sustain its burden of establishing that Dr. Cooper is qualified as an expert in the relevant technical fields, the Court need not address the reliability of his proffered testimony."); *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd*, 2015 WL 224942, at *4 (M.D.N.C. Jan. 15, 2015) ("Because [expert] does not possess at least ordinary skill in the pertinent art, he cannot aid the court in determining how a person of ordinary skill in the art would understand the term "intumescent" in the context of the claims in this case and is therefore not qualified under Rule 702 for purposes of the present motion . . . Rather than strike Dr. Wilkie's declaration, which is not a pleading, the court will simply disregard it for claim construction purposes."); *Everlight Elecs. Co. v. Nichia Corp.*, 2014 WL 4707053, at *9 (E.D. Mich. Sept. 22, 2014) ("The Court tends to agree with [defendant] and concludes that [expert's] enablement opinion concerning the Markush group claim limitation must be excluded. [Expert's] expertise in the broad field of chemical engineering does not qualify him to opine and offer testimony in all areas of the chemical engineering field.").

## III. DR. DEMPSEY IS NOT A PERSON OF ORDINARY SKILL IN THE ART

Dr. Dempsey defined the relevant POSITA as follows:

> A Person of Ordinary Skill In The Art would have a graduate degree in mental health, neuroscience, or a related field with substantially similar courses, and 3-4 years of work experience, *in addition to having advanced training and experience in use of either EEG or TMS technology*.

(Doc. No. 34-1, ¶ 16; emphasis added.)

Dr. Dempsey's definition was adopted by Brain Frequency in its Opening Claim Construction Brief. (Doc. No. 34, at 4.) While Wave disagrees with Dr. Dempsey's definition as detailed by Dr. Marom Bikson, Wave's expert (Doc. No. 32, p. 5), a review of Dr. Dempsey's declaration (Doc. No. 34-1) and curriculum vitae, as updated (Taché Decl., ¶ 8(b.); Exhibit D), reveals a complete absence of evidence demonstrating the requisite "advanced training and experience in use of either EEG or TMS technology." Wave met and conferred with Brain Frequency to raise this very issue. (Taché Decl., ¶¶ 8-13.) In response, Brain Frequency did not dispute that it failed in its initial filing to support its claim that Dr. Dempsey has sufficient TMS or EEG advanced training or experience to qualify as a POSITA. Instead, Brain Frequency summarily stated "Dr. Dempsey is qualified to render his opinions as a POSITA" and, "[a]s a courtesy" "included a more detailed c.v. for [] consideration." *Id.* at ¶ 10. The revised curriculum vitae does not carry Brain Frequency's burden, and in pertinent part, only added:

> **ACTIVE RESEARCH PROJECTS**
>
> **Study of TMS as Addiction Treatment**
> Institutional Review Board: Advarra IRB # Pro00061473
> **6100 Merriweather Dr., Suite 600**
> **Columbia, MD 21044**
> Principal Investigator: **Jared P. Dempsey**
> Funding Dates: May 2022 – April 2024
> Status: Data collection complete. Publication in progress.

(Taché Decl., ¶ 11.)

BN 82821525v6

Brain Frequency did not direct Wave to *any* of Dr. Dempsey's education, professional appointments, service activities, awards/honors, secured grants and fundraising, supervised grants and awards, professional affiliations, publications (peer-refereed or not), professional representations, or professional activities to support its contention that Dr. Dempsey has sufficient TMS or EEG advanced training or experience to qualify as a POSITA under his own definition. And there was certainly no sworn testimony from Dr. Dempsey on the subject.

In the eleventh hour, it now *adds* for the first time, that Dr. Dempsey is involved in a study of TMS as an addiction treatment. What is missing is equally as important as what was included. Brain Frequency, despite Wave's explicit request, still did not provide any information that would support the claim Dr. Dempsey gained *advanced training and experience* in the *use of TMS technology*. For example, Brain Frequency and Dr. Dempsey did not provide:

(1) Information on the nature of the study other than could be gleaned from the added entry on his curriculum vitae ("Study of TMS as Addiction Treatment");

(2) The amount of hours Dr. Dempsey worked on the project or how many of such hours, if any, related to training and experience on TMS technology;

(3) Dr. Dempsey's role in the study, other than to say he was the primary investigator and completed the "methodological design and the institutional review board approval"—which speaks nothing to TMS or EEG technology training and experience;

(4) Identification of other persons named as researchers with the project and their roles; or

(5) A copy of the draft publication[3].

[3] Brain Frequency's claim the "information and details of the study are sensitive and confidential" are without merit as it could have provided such information with a confidentiality designation.

It was Brain Frequency's initial burden to demonstrate its proffered expert has the requisite knowledge, skill, experience, training, or education to qualify as a POSITA in order to offer his opinions on claim construction. Since, it has had several opportunities to carry its burden, yet still—there is no evidence Dr. Dempsey has advanced training and experience in TMS or EEG technology.

If Dr. Dempsey does have the prescribed advanced training and experience in use of EEG or TMS technology, it is not clear by the record and Brain Frequency, therefore, has not carried its burden of establishing its proffered expert is qualified. *Daubert,* 509 U.S. 590–91. Dr. Dempsey's opinions, because he has not been shown to qualify as a POSITA under his own test, are unreliable under Fed. R. Evid. 702, and his declaration should be stricken and so too should any reliance thereon contained within any of Brain Frequency's claim construction briefing.

## IV. DR. DEMPSEY'S OPINIONS ARE UNRELIABLE AND NOT USEFUL

Dr. Dempsey's declaration is also not useful to the Court because it provides only conclusory, unsupported assertions. Extrinsic evidence in the form of expert testimony may be useful "to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. "However, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Id.*

Dr. Dempsey consistently fails to provide any meaningful analysis in his Claim Construction Opinions. (Doc. No. 34-1, pp. 5-11). Instead, he attempts to assert, as an example, a POSITA would not understand the disputed claim terms because "the patent specification does not provide sufficient guidance" (*id.* ¶ 19 discussing "improving" a condition), because the term "is

not defined in th[e] patent" (*id.* ¶ 24 – discussing intrinsic frequency), because the "patent specification does not provide an explicit definition" (*id.* ¶ 27 – discussing Q-Factor), because the "specification does not explain what a coherence value is or how it is measured" (*id.* ¶ 30 – discussing Coherence Value), because the "Common Asserted Patents . . . fail to instruct a POSITA" (*id.* ¶ 33 – discussing move/moving), or because "the patent does not teach how to use or control movement" (*id.* ¶ 39 – discussing control the magnetic field).

In each such instance, Dr. Dempsey's position is refuted by abundant intrinsic evidence to the contrary, and which provides exactly the disclosure, guidance, and definitions that are allegedly lacking. *See* Wave's Opening Claim Construction Brief (Dkt 32) and Wave's Responsive Claim Construction Brief (Doc. No. 38). Courts have consistently held expert testimony conflicting with intrinsic evidence is not admissible. *See Key Pharms. v. Hercon Lab'ys Corp.,* 161 F.3d 709, 716 (Fed. Cir. 1998) ("What is disapproved of is an attempt to use extrinsic evidence to arrive at a claim construction that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent."); *Markman* 52 F3d. at 981 (extrinsic evidence may not be used "for the purpose of varying or contradicting the terms in the claim.).

Additionally, while Dr. Dempsey has defined a POSITA with having, in part, "a graduate degree in mental health, neuroscience, or a related field" (Doc. No. 34-1 ¶ 16), he has further narrowed the acceptable qualifications of a POSITA, in reaching some opinions, to "used in mathematics" (*id.* at 30), and to "the field of neuroscience" (*id.* at 47), all without explanation or justification.

When, in those rare instances that Dr. Dempsey does provide his perception of what portions of the intrinsic evidence contains or doesn't, he does so without providing the required

perspective concerning the technical aspects of the patent and the particular meaning of claim terms in that field. *Phillips*, 415 F.3d 1318 at 1318. Though, Dr. Dempsey confirms his understanding that a POSITA "is presumed to be aware of all pertinent prior art, think along the line of a conventional wisdom, and possess ordinary creativity in the field" (*id.* ¶ 15), he nevertheless fails to provide *any* analytical reasoning of why a POSITA would not understand the meaning of the disputed claim terms other than to say the subject patent(s) do(es) not explain it.

## V. DR. DEMPSEY DID NOT MEANINGFULLY CONSIDER EXTRINSIC EVIDENCE

Dr. Dempsey recited his understanding "that if the intrinsic evidence fails to clearly disclose the meaning of a claim term (as Dr. Dempsey has opined here), the court may look to extrinsic evidence outside the patent and the prosecution history . . . ." (*Id.* ¶ 17.) But Dr. Dempsey failed to undertake this second step and fails to provide any such perspective, consideration, or analysis.

Instead, his Declaration amounts to little more than unsupported complaints about what is allegedly missing from the intrinsic evidence such that a POSITA would not understand the disputed claim terms, despite abundant intrinsic evidence supporting Wave's proposed construction of each of the disputed claims. This is not surprising considering Dr. Dempsey, in forming his opinions, considered his "years of education, research, and experience in the relevant field." (*Id.*) That relevant field includes "advanced training and experience in the use of either EEG or TMS technology." (*Id.* ¶ 16.) As discussed above, Dr. Dempsey, facially, has not evidenced that he meets these qualifications and so he is not able, as required, to provide a particular meaning to the disputed claims from the perspective of the POSITA.

Moreover, Dr. Dempsey exceeds his role in this case, by actually rendering opinions as to the ultimate conclusion of law. *See e.g. id.* ¶ 34 ("quite certainly, a person could infringe this claim

by taking a magnet and waiving it over one's head."), ¶ 20 ("the term intrinsic frequency is not a term of art and has no ordinary meaning".).

Ultimately, Dr. Dempsey provided the Court with conclusory, unsupported opinion without analysis of the patents, specifications, prosecution history, prior art, dictionaries, treatises, or reasoning related to a POSITA. His opinions are neither helpful nor reliable, and should be stricken.

## VI. DR. DEMPSEY'S OPINIONS ARE BIASED

Dr. Dempsey is not a neutral expert, but is the co-founder of a business with explicit ties to at least one company that shares common ownership with Brain Frequency and that was a prior defendant in the instant matter.

According to Dr. Dempsey, he is currently the Chief Scientist and Co-Founder of Trac9.com and the Chief Science Officer and Co-Founder of Recovery Science, LLC.[4] (Doc No. 34-1, p. 14.) Trac9.com explicitly advertises that it works with Windmill Wellness Ranch, and provides a hyperlink from its website directly to the Windmill Wellness Ranch website (https://windmillwellnessranch.com/; last visited May 28, 2024). (Taché Decl. ¶¶ 2, 3.) (https://trac9.com/; last visited May 28, 2024). Following is an excerpt from Trac9.com's website:

(Taché Decl., ¶ 2.)

[4] Wave was unable to locate any formal business formation documents for Recovery Science, LLC, so it is unclear at this time whether Recovery Science, LLC is also affiliated with Brain Frequency or its Members' other businesses.

According to the 2022 Texas Franchise Tax Public Information Report for Windmill Wellness Ranch LLC, Shannon Malish is the President and Julia Cline-Sellers is the Director. (Taché Decl., ¶ 4.). Shannon Malish and Julia Cline (aka Julia Cline-Sellers) are reported as Members for Brain Frequency on its 2023 Texas Franchise Tax Public Information Report. (Taché Decl., ¶ 5.) It is apparent Brain Frequency and Windmill Wellness Ranch LLC share common owners.

As Trac9.com works with Windmill Wellness Ranch LLC it ostensibly has an ongoing business relationship and perhaps personal relationships with Shannon Malish and Julia Cline, the Members of Brain Frequency. To wit, Shannon Malish and Julia Cline's Windmill Wellness Ranch website reciprocates the advertisement provided by Trac9.com on its website, by posting the results of an "independent study" by Trac9, on its own website:



(Taché Decl., ¶ 6; https://windmillwellnessranch.com/, last visited May 28, 2024.)

Shannon Malish and Julia Cline's Windmill Wellness Ranch website also advertises an ongoing business relationship with Trac9.com:

> To that end, we employ meticulous independent third party tracking of our success metrics with Trac9, and have consistently found the Windmill Wellness approach surpasses those of other treatment centers.

(Taché Decl., ¶ 7; https://windmillwellnessranch.com/about/best-outcomes-in-the-nation, last visited May 29, 2024.)

Clearly Windmill Wellness Ranch LLC employs Trac9.com for, at least, tracking metrics. Dr. Dempsey did not disclose this financial relationship between the company he co-founded and the former defendant in this matter that shares common ownership with Brain Frequency. Due to these financial ties, Dr. Dempsey's opinions should not be perceived as those of a neutral party.

Compounding this bias is that Dr. Dempsey is not qualified as a POSITA. As the court in *Phillips* recognized, extrinsic evidence consisting of expert report and testimony generated at the time and for the purpose of litigation can suffer from bias that is not present in intrinsic evidence. *Phillips,* 415 F.3d at 1318. "The effect of that bias can be exacerbated if the expert is not one of skill in the relevant art . . . ." *Id.* Dr. Dempsey's bias results from both his undisclosed business relationship and his lack of qualification as the relevant POSITA.

## VII. CONCLUSION

For all the reasons above, Wave respectfully requests the Court strike the Declaration of Dr. Jared Dempsey submitted by Brain Frequency (Doc. 34-1), and all citations to Dr. Dempsey's Declaration in Brain Frequency's Claim Construction Briefs (Doc. No. 34).

DATED: June 5, 2024

Respectfully submitted,

*/s/ J. Rick Taché*

Harry L. Gillam Jr. (State Bar No. 07921800)
J. Travis Underwood (State Bar No. 24102587)
**GILLAM & SMITH, L.L.P.**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903.934.8450
Facsimile: 903.934.9257
Email: travis@gillamsmithlaw.com

**BUCHALTER**
A Professional Corporation
J. Rick Taché (pro hac vice)
Deborah S. Mallgrave (pro hac vice)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Fax: 949.720.0182
Email: rtache@buchalter.com
dmallgrave@buchalter.com

*Attorneys for Plaintiff*
WAVE NEUROSCIENCE, INC.,
a Delaware Corporation

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on June 5, 2024.

*/s/ J. Rick Taché*
J. Rick Taché