UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| WAVE NEUROSCIENCE, INC. a Delaware Corporation,<br><br>  Plaintiff,<br><br>vs.<br><br>BRAIN FREQUENCY LLC, a Texas Limited Liability Company<br><br>  Defendant. | Case No. 5:23-cv-00626-XR<br><br>Honorable: Xavier Rodriguez |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S NOTICE OF CURE WITH RESPECT TO THE COURT'S ORDER (DKT. NO. 47) REGARDING EXPERT QUALIFICATIONS**

## I.  INTRODUCTION

As the Court is aware, on October 4, 2024, it granted the motion of plaintiff Wave Neuroscience, Inc. ("Wave") to strike the declarations of defendant Brain Frequency, LLC's witness Dr. Jared Dempsey relating to claim construction issues on the ground that his "qualifications are insufficient to satisfy Federal Rule of Evidence 702 at this stage and thus he cannot offer expert opinions as a POSITA." ECF No. 47 at 3 (hereinafter, the "Court Order"). While the Court, in a footnote, stated the motion was granted "without prejudice to the extent Brain can cure the deficiencies with Dr. Dempsey's qualifications" (*Id.*), it is the height of hubris and procedurally improper for Brain Frequency to unilaterally declare the deficiencies as cured and that the Court Order striking Dr. Dempsey's declarations and testimony as a POSITA is moot or has been vacated, absent the Court having the opportunity to rule on this critical issue.

The only logical interpretation for the improperly titled "Notice of Cure" is to consider it in the form a motion for reconsideration of the Court Order.  Regardless of title, as detailed below, Brain Frequency's notice/motion/request should be denied as it attempts to usurp the Court's authority to evaluate Dr. Dempsey's qualifications, is procedurally improper in multiple respects (including the failure to provide Wave with advance notice of the request to the Court or sufficient time to consider Dr. Dempsey's newly asserted qualifications) and untimely, and causes undue prejudice to Wave.  In addition, Brain Frequency's notice, and Dr. Dempsey's newly asserted qualifications, do not remotely cure the previous deficiencies as set forth in the Court Order or otherwise establish that it is more likely than not that Dr. Dempsey is a POSITA qualified to give testimony at the *Markman* hearing.

Brain Frequency's notice of cure, or mistitled request for reconsideration of the Court Order striking Dr. Dempsey's declarations and precluding him from testifying as a POSITA, and

further requesting to present live testimony of Dr. Dempsey at the *Markman* hearing, should be denied.

## II. BRAIN FREQUENCY'S NOTICE ATTEMPTS TO USURP THE COURT'S AUTHORITY TO DETERMINE WHETHER DR. DEMPSEY IS QUALIFIED AS A POSITA

The Court's Order irrefutably finds Dr. Dempsey is not qualified as a POSITA and strikes his report and declarations from consideration. Until the Court modifies, reverses, or vacates the Court Order, it stands and is binding upon the parties. "There are a number of ways to challenge a court decision. Ask the court to reconsider. Appeal. Find a valid means of collateral attack in another court. But ignoring the court's decision, or acting as if it were not binding, is no way to bring a challenge. It is, however, a good way to invoke a court's sanction powers." *Universal Grp. Dev. Inc. v. Yu*, No. 1:15-CV-0002, 2016 WL 3950746, at *1 (D. N. Mar. I. July 6, 2016).

With its alleged Notice to Cure, Brain Frequency ignores the Court Order striking Dr. Dempsey's declarations and precluding him from testifying at the *Markman* hearing as a POSITA. While the Court Order was made without prejudice, Brain Frequency cannot assume to unilaterally declare the deficiencies as cured and that the Court Order striking Dr. Dempsey's declarations and precluding his testimony as a POSITA is moot. Rather, if Brain Frequency sought to modify or reverse the Court Order, it was incumbent upon Brain Frequency to both properly and in a timely manner seek reconsideration or some other form of relief. Brain Frequency did not do so. Indeed, its Notice of Cure does not request or seek relief from the Court in any way. The alleged notice also attempts to deny Wave the opportunity to challenge Brain Frequency's re-assertion that Dr. Dempsey is qualified as a POSITA.[1]

---

[1] As identified in the email communications attached as Exhibit B to the notice, Brain Frequency provided Wave with *less than twenty-four (24) hours* to review Dr. Dempsey's newly asserted qualifications before—without waiting for a response or any notice to Wave—it filed its Notice of Cure with the Court. ECF No. 49-2 at 1. Brain Frequency further seeks to rely on a copy of

2

Since Brain Frequency's Notice of Cure seeks no relief, and has no effect or impact on the Court Order, it should be disregarded and denied on that basis alone.

### III. BRAIN FREQUENCY'S MISTITLED REQUEST FOR RECONSIDERATION IS UNTIMELY AND CAUSES UNDUE PREJUDICE

If Brain Frequency sought to modify or reverse the Court Order, it was incumbent upon it to seek the appropriate relief. Pursuant to Federal Rule of Civil Procedure 60, on a "*motion and just terms*," the court may relieve a party from an order for certain itemized reasons, including mistake or inadvertence, newly discovered evidence, fraud, a void judgment, a judgment has been satisfied, or "any other reason that justifies relief." Fed. R. Civ. Proc. 60(b) (emphasis added). "A motion under Rule 60(b) must be made within a reasonable time." Fed. R. Civ. Proc. 60(c)(1). Regardless of whether Brain Frequency claims a basis to obtain relief from the Court Order, it has not sought relief in a timely manner (or, as pointed out earlier, at all).

Here, the Court Order to which Brain Frequency seeks relief was entered *over two weeks ago*, on October 4, 2024, and impacts the parties' preparation for and presentation of evidence at the *Markman* hearing that is now less than a week and a half away, on October 30, 2024. Needless to say, time is of the essence. What is more, the issue in dispute relates to the qualifications of Brain Frequency's own expert—information in Brain Frequency's own custody or control that has been at issue since Wave first provided notice of the challenge in a timely and procedurally proper manner in May 2024 (ECF 39-1 at ¶ 8), and to which Brain Frequency has already made two prior failed attempts to qualify Dr. Dempsey as a POSITA. Under these circumstances and the time pressures facing the parties, Brain Frequency's delay in taking *over two weeks* to provide additional information to bolster Dr. Dempsey's qualifications is inherently unreasonable and

---

the Application for the May 2022-April 2024 study that it has posited as Dr. Dempsey's primary qualification as a POSITA, attached as Exhibit 2, yet *never provided* this document to Wave prior to filing the notice. Taché Decl. ¶ 4; ECF No. 49-1 at 28.

untimely. Waiting until just two weeks before the *Markman* to again try and qualify its witness as a POSITA does not afford the Court or Wave the ability to timely address any good faith dispute as to Dr. Dempsey's qualifications.[2] Nor does it afford Wave time to properly prepare for the *Markman* hearing in the unlikely event that the Court adopts Brain Frequency's interpretation of the footnote contained within the Court Order and ultimately determines Dr. Dempsey is qualified as a POSITA and reinstates his declarations.

As such, Brain Frequency's most recent attempt to qualify Dr. Dempsey as a POSITA is untimely and prejudicial, and should be denied.

### IV. BRAIN FREQUENCY'S BELATED ATTEMPT FAILS TO "CURE" THE DEFICIENCIES WITH DR. DEMPSEY'S QUALIFICATIONS AS A POSITA

In ruling that Dr. Dempsey was not qualified as a POSTIA, the Court previously found that Brain had not "provided sufficient evidence to make it *more likely than not* that Dr. Dempsey . . . ha[d] 'advanced training and experience' in TMS technology (Brain's POSITA) or 'at least three (3) years of experience in a job working with patients having brain disorders using treatment protocols involving TMS' (Wave's POSITA)." ECF No. 47 at 7. Not only did Dr. Dempsey's submitted qualifications "lack [] evidence demonstrating Dr. Dempsey's training in TMS whatsoever," the "only mention" of his experience with TMS came "in the form of a single research project from May 2022-April 2024." *Id*. at 8. Such experience did not "appear to be a hands-on or technology facing role, where one may have received 'advanced training or experience' with TMS." *Id*. Dr. Dempsey's new declaration, though more carefully worded than his two prior declarations, still fails to provide the requisite evidence of any additional advanced

---

[2] As it is, as mentioned earlier, Brain Frequency filed its alleged notice of cure without affording Wave sufficient time to review and consider Dr. Dempsey's newly asserted qualifications or engaging in a good faith meet and confer.

training and experience required by the Court to qualify as a POSITA.[3]

While Dr. Dempsey now claims to have "over three years of experience working with patients having brain disorders, using treatment protocols involving TMS and EEG/electrophysiology, including making clinical decisions on a patient-by-patient basis" (ECF No. 49-1, Ex. A ¶ 27), the experience itemized in his supplemental declaration does not support or otherwise justify this conclusion. The majority of references to TMS in Dr. Dempsey's background amount only to vague academic experiences—subjects studied and seminars attended—or are otherwise lacking details to discern any relevant experience. Dr. Dempsey still does not provide any details on any "hands-on or technology facing role[s]" from which he could have received advanced training or experience with TMS.

For example, Dr. Dempsey mentions that Dr. Borckardt trained him in the "theoretical foundations and clinical applications of TMS," but in describing the specific clinic work for which he was supervised, Dr. Dempsey does not mention TMS at all. ECF No. 49-1, Ex. A ¶ 13 ("Dr. Borckardt also supervised my clinical work related to the assessment of preoperative psychological evaluations and the application of neurofeedback with patients.") Dr. Dempsey next claims that his residency program included "mentorship and training from leading experts [that] significantly expanded [his] understanding of addiction and brain stimulation therapies, including TMS" and that he attended a training seminar where he attended *one* "in-depth session" on multiple different brain stimulation technologies, including Vagus Nerve Stimulation (so not even an entire session

---

[3] Brain Frequency's definition of a POSITA is a lower standard than that proposed by Wave. Given that the Court has not yet issued an Order adopting either Wave's or Brain Frequency's definition of a POSITA or, alternatively, adopted its own definition of a POSITA, the mere fact that Dr. Dempsey potentially qualifies under Brain Frequency's definition of a POSITA does not guarantee that Dr. Dempsey qualifies as a POSITA under the definition ultimately adopted by the Court in this case. Wave does not in good faith believe that Dr. Dempsey, based upon the additional information contained within his supplemental declaration, qualifies as a POSITA, even under Brain Frequency's lower qualifications.

5

PLAINTIFF'S RESPONSE TO
DEFENDANT'S NOTICE OF CURE

on TMS), but does not identify any TMS hands-on or technology facing roles. *Id*. at ¶ 14.

Dr. Dempsey then claims he utilized technology in his research that is often used in connection with TMS (functional near-infrared spectroscopy ("fNIRS")), but does not actually state that he utilized TMS as part of his research in any way. *Id*. at ¶ 16. Dr. Dempsey claims his relevant experience from 2015 includes "independent study," but does not identify what he studied; "researched specific brands of TMS technology for potential use in future studies," but does not claim to have ever used any of the various brands or used the technology in a study (until the 2022 study); and "assigned relevant readings to research assistants," but does not explain how that gives him a technology facing role. *Id.* at ¶ 16. Dr. Dempsey also refers to a presentation he gave on "TMS and its applications in addiction treatment" in 2018, but does not provide any specifics on the subject matter of the presentation (or even whether he presented his research or that of others), and no details are included in his *curriculum vitae* under "Professional Presentations." *Id.* at ¶ 19 and Ex. 1 at 23.

In one of the most puzzling and misleading references, Dr. Dempsey claims that he was asked to serve as an expert peer reviewer for a still unpublished journal article over six years ago titled "Transcranial Direct Current Stimulation . . ." (*Id.* at ¶ 20), but fails to disclose that Transcranial Direct Current Stimulation ("tDCS") utilizes different technology than TMS. Greg J. Elder & John-Paul Taylor, *Transcranial magnetic stimulation and transcranial direct current stimulation: treatments for cognitive and neuropsychiatric symptoms in the neurodegenerative dementias?* 6 Alzheimer's Rsch. & Therapy, art. 74, Nov. 2014, at 1, 2, https://doi.org/10.1186/s13195-014-0074-1; Declaration of J. Rick Taché ("Taché Decl."), ¶ 2 and Ex. 1.

As to the previously identified research project (that the Court found inadequate), the May 2022-April 2024 study, the additional details provided do not bolster Dr. Dempsey's qualifications or indicate a technology facing role. First, while Dr. Dempsey claims the study included 30 subjects/patients, he admits he did not have a forward facing role with all or even most of them. ECF No. 49-1, Ex. A ¶ 22-23 (Dr. Dempsey "directly participat[ed] in the treatment of *a number of subjects*") (emphasis added). Second, notably absent from the new details presented is any explanation as to the nature of the actual TMS treatments provided. As the Court previously recognized, tracking the efficacy and impact of TMS does not qualify one as a POSITA in the field. ECF No. 47 at 8.

Perhaps most egregiously, the parties and the Court now know why Brain Frequency and Dr. Dempsey were so unwilling to previously disclose any details about this study. As it turns out, the primary source of experience Brain Frequency uses to support Dr. Dempsey's qualifications relating to TMS is a study Dr. Dempsey constructed *for Brain Frequency*.[4] Thus, Dr. Dempsey's only real attempt to show "advanced training and experience" using TMS is through use of the alleged infringing product. ECF No. 49-1, Ex. A ¶ 22. This is not a proper study from which a POSITA should glean "advanced training and expertise" of TMS treatment.

In sum, Dr. Dempsey's new declaration still does not provide details on any "hands-on or technology facing role[s]" from which he could have received advanced training or experience with TMS (Brain Frequency's POSITA) or at least three (3) years of experience working with patients using treatment protocols involving TMS (Wave's POSITA). Accordingly, under either POSITA definition, Dr. Dempsey fails and does not qualify. Brain Frequency's notice of cure, or

---

[4] Dr. Dempsey's admission concerning his work and business relationship with Brain Frequency conclusively establishes bias in connection with his engagement as Brain Frequency's "expert." Brain Frequency's previous response to Wave's bias argument, that such concerns were "meritless" (ECF No. 42 at 8), do not just ring hollow, but now appears highly disingenuous.

mistitled request for the Court to reconsider its order striking Dr. Dempsey's declarations and precluding him from testifying as a POSITA, should be denied.

V. **BRAIN FREQUENCY IMPROPERLY SEEKS TO DESIGNATE DR. DEMPSEY AS A WITNESS FOR THE *MARKMAN* HEARING LESS THAN TWO WEEKS BEFORE THE HEARING**

In addition to unilaterally determining that Dr. Dempsey is qualified as a POSITA, Defendant also unilaterally declared that it "intends to elicit testimony from Dr. Dempsey at the upcoming Markman hearing on October 30, 2024, as a POSITA with respect to the opinions disclosed in each of his declarations regarding claim construction." ECF No. 49 at 3. Defendant's "notice" of its intent to present live testimony at the *Markman* hearing is deficient in at least two respects: (1) a party wanting to present live testimony at the *Markman* must request leave of Court; and (2) Brain Frequency's request (if it can be called that), is too late and does not provide the Court or Wave with adequate notice.

Pursuant to the Court's Scheduling Order, the parties were required to request leave to present testimony at the *Markman* by the date on which their Joint Claim Construction Chart was filed, or on April 19, 2024, *over six months ago*. ECF No. 25 at 3. While the parties attempted to preserve their right to present testimony in a letter to the Court, submitted on April 19, 2024 (the same day the parties filed their Joint Claim Construction Chart), neither party followed up with a formal request for live testimony, nor was the presentation of live testimony brought up or discussed at the status conference and hearing with the Court on October 2, 2024. Taché Decl. ¶ 3.

Regardless, the Court Order specifically *precludes* Brain Frequency from having Dr. Dempsey testify as a POSITA at the hearing. ECF No. 47 at 9. Even if Brain Frequency's notice is interpreted as a request to present live testimony of Dr. Dempsey as a POSITA (or otherwise), the belated and deficient request, provided <u>less than</u> two weeks before the *Markman* hearing unquestionably prejudices Wave and its ability to prepare for the hearing. Since the Court

8

precluded Brain Frequency from presenting the testimony of a POSITA, Wave was not planning on bringing its own POSITA for live testimony and thus prepared for a hearing without live testimony. Similarly, without notice from Brain Frequency of any intent to present live testimony of Dr. Dempsey as a non-POSITA, Wave is equally unprepared for that scenario. As Dr. Dempsey is not a POSITA, Brain Frequency should have disclosed, before now, the topics on which it seeks to elicit testimony to afford Wave an opportunity to object and/or prepare rebuttal witnesses. Brain Frequency, however, still has not done so. The Court's determination at this late stage, with less than a week and half before the hearing, that the parties may present live testimony of any witnesses serves only to prejudice Wave and benefit Brain Frequency for ignoring proper procedures and timelines.

Regardless of whether the Court considers Dr. Dempsey a POSITA, Brain Frequency's request for Dr. Dempsey to testify at the hearing should be denied.[5]

## VI. CONCLUSION

Based on the foregoing, Wave respectfully requests that Brain Frequency's notice of cure, or mistitled request for the Court to reconsider its order striking Dr. Dempsey's declarations and precluding him from testifying as a POSITA and further requesting to present live testimony of Dr. Dempsey at the *Markman* hearing, be denied.

DATED: October 21, 2024                                      Respectfully submitted,

                                     */s/ J. Rick Taché*
                               Harry L. Gillam, Jr.
                               Texas Bar No. 07921800

---

[5] If the Court does allow Dr. Dempsey to testify in-person at the *Markman* hearing, Wave reserves the right to separately move for relief and/or aid from the Court due to the time sensitive nature and impact of this modification to the previously determined procedures for the *Markman* hearing. Among other things, Wave would request an abbreviated deposition to inquire on issues that impact the credibility and weight of Dr. Dempsey's testimony, including his background, experience, and obvious bias.

> J. Travis Underwood
> Texas Bar No. 24102587
> **GILLAM & SMITH, LLP**
> 303 South Washington Avenue
> Marshall, Texas 75670
> Telephone: (903) 934-8450
> Facsimile: (903) 934-9257
> Email: gil@gillamsmithlaw.com
> Email: travis@gillamsmithlaw.com
>
> J. Rick Taché (*pro hac vice*)
> Deborah S. Mallgrave (*pro hac vice*)
> **BUCHALTER**
> A Professional Corporation
> 18400 Von Karman Avenue, Suite 800
> Irvine, CA  92612-0514
> Telephone: (949)760-1121
> Facsimile: (949) 720-0182
> Email: rtache@buchalter.com
> Email: dmallgrave@buchalter.com
>
> *Attorneys for Plaintiff*
> *WAVE NEUROSCIENCE, INC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on October 21, 2024.

> */s/ Deborah Mallgrave*
> Deborah Mallgrave